# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. J. GUIDO-SEGER, Minor.

UNPUBLISHED
February 7, 2017

No. 333529
Livingston Circuit Court
Family Division
LC No. 2015-014958-NA

Before: M.J. KELLY, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

Respondent appeals by right the termination of her parental rights to her son under MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication still exist and are unlikely to be timely rectified), MCL 712A.19b(3)(g) (parent failed to provide proper care or custody), and MCL 712A.19b(3)(j) (reasonable likelihood the child would be harmed if returned to the parent).[1] We vacate and remand.

## I. FACTS

Respondent, an intellectually disabled adult, began receiving mental health services from the Department of Community Mental Health (CMH) in 2003. She had a long history of mental health issues including suicide attempts and was subject to the guardianship of her mother prior to the commencement of this case. Once CMH became aware of her pregnancy, the Department of Health and Human Services (DHHS) became involved with her care, also. The DHHS provided services to respondent during her pregnancy. CMH psychologist Renee Jones performed a psychological evaluation on respondent three months prior to her giving birth. Jones diagnosed respondent as having an intellectual disability, borderline personality disorder, attention deficit hyperactivity disorder, and "intermittent explosive disorder (a mood disorder). Respondent's IQ tested in the mid- to high 60s, which gave her the adaptive functioning level of a five- to seven-year-old child. Adaptive functioning measures a person's ability to function independently in comparison to an age cohort. Jones opined that respondent's "disability will continue throughout her life and it functionally interferes with her ability to make informed decisions in language, learning, self-direction, independent living and economic self sufficiency." Jones recommended a partial guardianship to assist respondent "in the areas of

---

[1] The parental rights of the father were also terminated; he has not appealed.

-1-

legal, medical, financial and placement decision-making." Respondent's mother was appointed her guardian. Even with the guardianship in place and the respondent and the infant's father both residing in her guardian's home, the DHHS petitioned to remove respondent's child five days after his birth citing concerns about the home environment and respondent's ability to care for the child. About four months after the child was removed, counsel for petitioner explained at length the "intense services" she believed would be necessary to provide respondent in order to comply with the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq.*, in light of respondent's cognitive difficulties.

Upon the recommendation of the DHHS, the court ordered the family be referred "for hands-on parenting instruction for both parents through LACASA, Health[y] Families, PIP [Parent Infant Program], or similar one-on-one parenting instruction with a service provider experienced in working with cognitively impaired people." In her capacity as a DHHS foster-care worker, Laurie Russell took over the case in January 2016. Russell testified at the termination proceedings that respondent, the child and the child's father were provided services including case management, therapy, and food stamps, and were involved with PIP, the Healthy Families program, LACASA's Parent Coach program, and the Women, Infants, and Children program.

At the close of testimony, the referee stated that she reviewed the recent Court of Appeals decision in *In re Hicks/Brown Minors*, 315 Mich App 251; ___ NW2d ___ (2016) (Docket No. 328870),[2] which held that the DHHS was required to provide the respondent services that reasonably accommodated her cognitive impairments before it could terminate her parental rights. The referee then stated:

> There have been reasonable accommodations for these parents. There have been more than reasonable accommodations for these parents. There have been no less than four different services plus supervision of parenting time by Ms. Russell. So five different attempts at five different angles to try to affect their parenting time. And for reasons that are not in their control they're unable to do it. And it is sad, but it is true. And I don't know what else the department could have done. I understand that Hicks Brown says the department is required now to search for a plan where a parent can be basically placed with a support person and the support person can raise the child with the parent to ensure the safety. So it's basically the support person who is the parent helping the parent have contact with the child. I don't know what else the department can do. [The lawyer/guardian ad litem] is right[;] we can't go through a phonebook. They can't walk the streets looking for people to sign up for this. And the department asked the parents, they asked relatives. There's no requirement that they search the entire family tree and find people the parents can't even identify as support people. And there are no appropriate support people that can do that. I'm not even convinced that there are

---

[2] Oral argument on the application for leave to appeal was granted. *In re Hicks/Brown Minors*, 499 Mich 982; 882 NW2d 136 (2016).

appropriate support people that can protect these parents who need care and support to meet their own needs. So I am going to recommend to the Judge that an order of termination of parental rights be entered.

The court entered an order terminating respondent's parental rights.

## II. ANALYSIS

### A. NO-CONTEST PLEA

Respondent argues that the court violated her constitutional right to due process by accepting her no-contest plea without ensuring that it had been made knowingly and understandingly in light of her cognitive disabilities. This argument constitutes a collateral attack on the court's assumption of jurisdiction, which is generally prohibited under *In re Hatcher*, 443 Mich 426, 444; 505 NW2d 834 (1993). The Michigan Supreme Court has since held that such a challenge may be permissible when "the manner in which the trial court assumed jurisdiction violated the [respondent's] due process rights." *In re Wangler/Paschke*, 498 Mich 911, 911; 870 NW2d 923 (2015) (2015). Such is the case here.

"Generally, whether child protective proceedings complied with a respondent's substantive and procedural due process rights is a question of law that this Court reviews de novo. However, because the issue presented is an unpreserved claim of constitutional error, this Court will review for plain error affecting substantial rights." *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014) (citations omitted).

MCR 3.971 governs the entry of pleas in termination cases. Subsection (C)(1) requires the court to "satisfy[ ] itself that the plea is knowingly, understandingly, and voluntarily made" before it accepts the plea. At the time of the plea proceeding, the court was aware that respondent was intellectually disabled, that she had difficulty reading, that her mental function was equivalent to that of a five- to seven-year-old, and that her disability interfered with her ability to make informed decisions. Respondent was told that she had an attorney who "would make recommendations based on what [she] want[ed] or would help [her]," and a guardian ad litem who would "make recommendations based on what she thinks is in [respondent's] best interest." Before being prompted by her attorney, respondent initially said that she did not have a copy of the petition and had not reviewed it. After agreeing that she reviewed it, she stated she did not have any questions. When asked whether she understood "the right to have the Department of Human Services or CPS prove the allegations against [her] by a preponderance of the evidence," respondent answered yes. When asked whether she understood the right to "cross-examine," "subpoena witnesses" and have a "trial" with a "jury," respondent answered yes. When asked whether respondent understood that her "plea" would result in the court "taking temporary jurisdiction" and that she would have to "comply with services and assessments," respondent answered yes. When asked whether she understood "that no contest doesn't mean not guilty or not responsible, it means that you're not required to make statements in court," respondent answered yes. The court allowed respondent to plead responsible to the child being born, to attending a family team meeting, and certain allegations against the father. The court allowed respondent to plead no contest, based on a lack of memory, to having

completed a psychological evaluation, to the contents of the evaluation, to receiving services from CMH, and to her mental limitations.

Given this record, we cannot conclude that the court satisfied itself of the requirements of MCR 3.971(C)(1). Respondent was appointed a guardian ad litem, whose role was to make decisions in respondent's best interest and to ensure respondent's welfare. MCR 3.916(A). The guardian ad litem stands in the place of the respondent as respondent's representative in court when respondent, due to her intellectual disability, could not represent herself. Despite these important roles, the guardian ad litem's representation was limited to the court asking the guardian ad litem whether she supported respondent's plea and the guardian ad litem answering yes. This singular statement provided no indication that the guardian ad litem was assured and communicated to the court, that respondent understood her rights, and the terms and the implications of her pleas of admission and no contest. It also did not provide a rationale for the no contest plea based on a lack of memory.[3] The statement also was insufficient to give the court a basis upon which to conclude that the pleas were in respondent's best interest. In error, the court directly questioned respondent as to her understanding of her pleas and relied on the responses of essentially, a five- to seven-year-old, to satisfy itself that respondent did understand. The court's summary consultation with the guardian ad litem was inadequate. Where the guardian ad litem's recommendation of the plea as being in respondent's best interests and assurance that respondent understood her rights was lacking, and where respondent could not provide this information otherwise, the court could not have satisfied itself that respondent's plea complied with the tenets of MCR 3.971(C)(1). The respondent, by entering the no contest plea, relinquished her right to a trial by judge or jury on the threshold jurisdictional question. There can be no doubt that this is a substantial right that compels reversal.

## B. STATUTORY GROUNDS FOR TERMINATION

### 1. STANDARD OF REVIEW

Respondent has also claimed that the termination decision itself was erroneous. We review for clear error the trial court's factual findings as well as its determination that a statutory ground for termination of parental rights has been proved by clear and convincing evidence. MCR 3.977(J); *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

### 2. ANALYSIS

The court terminated respondent's parental rights under MCL 712A.19b(3)(c)(i), MCL 712A.19b(3)(g), and MCL 712A.19b(3)(j), which provide as follows:

---

[3] We surmise that the lack of memory correlates to respondent's inability to form the required plea statement based on her intellectual disability — all the more reason for the guardian ad litem's recommendation of the plea to be on the record.

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(i) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Initially, we note that respondent has not directly challenged the court's findings or conclusion with regard to MCL 712A.19b(3)(j). Given that only one statutory ground need be established to terminate parental rights, *In re Frey*, 297 Mich App 242, 244; 824 NW2d 569 (2012), it is arguably unnecessary to address respondent's arguments regarding the other two grounds. However, because we read respondent's argument as presenting an overarching challenge to all three statutory grounds based on whether the services she was provided complied with the ADA, we will address the issue in full.

Before terminating a person's parental rights, the DHHS is required to make "reasonable efforts" to keep the child in the parent's care and to reunify the child and parent, with limited exceptions not applicable in this case. *In re Hicks/Brown Minors*, 315 Mich App at ___; slip op at 6, citing MCL 712A.18f(1), (4) and MCL 712A.19a(2). Whether the DHHS's efforts were reasonable affects whether there was sufficient evidence to support a ground for termination. *Id*. When the parent is disabled, the DHHS must make reasonable accommodations under Title II of the ADA to ensure that the parent benefits from the services it provides. *Id*.; slip op at 7; *In re Terry*, 240 Mich App at 25-26; see also 42 USC 12132 (providing that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity").

This Court recently addressed the standards for making reasonable accommodations in child-protective proceedings when providing services to a cognitively impaired parent in *In re Hicks/Brown Minors*, which involved a woman whose IQ was tested at 70, slightly above that of respondent in the present case. *In re Hicks/Brown*, 315 Mich App at ___; slip op at 1. Although the DHHS was aware of the woman's impairments, it spent two years providing services "geared toward a parent of average cognitive functioning." *Id*. at ___, slip op at 4. After reviewing the related caselaw, statutes, regulations, and publications on the subject, the Court held that when a parent is known or suspected to have a "cognitive, developmental, or intellectual impairment,"

> the DHHS must offer evaluations to determine the nature and extent of the parent's disability and to secure recommendations for tailoring necessary reunification services to the individual. The DHHS must then endeavor to locate agencies that can provide services geared toward assisting the parent to overcome obstacles to reunification. If no local agency catering to the needs of such individuals exists, the DHHS must ensure that the available service providers modify or adjust their programs to allow the parent an opportunity to benefit equal to that of a nondisabled parent. If it becomes clear that the parent will only be able to safely care for his or her children in a supportive environment, the DHHS must search for potential relatives or friends willing and able to provide a home for all. And if the DHHS shirks these duties, the circuit court must order compliance. Moreover, consistent with MCL 712A.19a(6), if there is a delay in providing the parent reasonably accommodated services or if the evidence supports that the parent could safely care for his or her children within a reasonable time given a reasonable extension of the services period, the court would not be required to order the filing of a termination period merely because the child has been in foster care for 15 out of the last 22 months. [*Id*. at ___; slip op at 16.]

Because those standards had not been met, the Court vacated the termination decision and remanded the case to allow the DHHS to provide the respondent services that reasonably accommodated her cognitive impairment. *Id*. at ___; slip op at 18.

Respondent argues that the DHHS failed to offer her specialized case planning that accommodated her intellectual disabilities and that the court erred by terminating her rights under MCL 712A.19b(3)(c)(*i*) without addressing whether respondent could have cared for the child with the proper support. We disagree. Within four and a half months of the child's removal, the DHHS had respondent evaluated, determined her individualized needs from the results of the evaluation, made contact with specific individuals as to recommendations of how to meet respondent's needs, and followed through with referrals. The DHHS realized that based on the psychological testing of respondent, compliance with the ADA was required and that plain supervised parenting time was not a reasonable accommodation given respondent's cognitive ability. Instead, petitioner determined that respondent needed intense one-on-one parenting instruction. The PIP and Healthy Families Program were identified to address respondent's individual needs. The PIP covered teaching respondent about the emotional connection required to bond with her child, while the Healthy Families Program offered a hands on parenting skills program that took place in the home. Because both programs were offered through CMH, a service provider experienced in working with cognitively impaired people was

-6-

involved. At the termination hearing, the court summarized all the services respondent had been provided which included CMH services, family-support services, parenting classes and resource services, a psychological evaluation, supervised parenting time with one-on-one instruction, PIP, a parenting coach, special education services, and the Early On program. Further, both Russell and Nicole Clark, a therapist employed in the developmental-disability program at Livingston County Community Mental Health, testified that the services respondent received had been adjusted for her cognitive disabilities by using pictures and repetition, saying things simply, and asking respondent to explain things back to ensure that she understood them. These efforts meet the requirement that the DHHS "endeavor to locate agencies that can provide services geared toward assisting the parent to overcome obstacles to reunification" and "ensure that the available service providers modify or adjust their programs to allow the parent an opportunity to benefit equal to that of a nondisabled parent." *Id*. at ___; slip op at 16.

Respondent also asserts that the DHHS failed to assist her in finding a housing situation in which she could care for her child. Under *In re Hicks/Brown*, 315 Mich App at ___; slip op at 16, "[i]f it becomes clear that the parent will only be able to safely care for his or her children in a supportive environment, the DHHS must search for potential relatives or friends willing and able to provide a home for all." The record shows that the DHHS fulfilled this duty. Russell testified she and two previous caseworkers attempted to identify a person who could provide the constant guidance that respondent would need to safely care for the child, but none of the candidates were suitable, and the DHHS's attempt to refer respondent to a local agency that helps people with disabilities was unsuccessful. The fact that the DHHS's search for candidates was ultimately unsuccessful does not amount to a violation of the ADA, given that "[t]he ADA does not require petitioner to provide respondent with full-time, live-in assistance with her children." *In re Terry*, 240 Mich App at 27-28.

Respondent next argues that the court erred by terminating her rights under MCL 712A.19b(3)(g) on the basis of its finding that she had not complied with the treatment plan, without addressing whether the treatment plan was reasonable in light of respondent's disability. As respondent notes, *In re Hicks/Brown* stated that a parent may not be ordered to "climb mountains that she could not possibly surmount" to avoid termination of her parental rights. *In re Hicks/Brown*, 315 Mich App at ___; slip op at 17. However, that statement was made in reference to a service plan that required the cognitively impaired parent to acquire a GED and secure a job and housing on her own. *Id*. No such unreasonable expectations were imposed here. The barriers that respondent was expected to overcome included her mental health issues, cognitive delays, poor parenting skills, and history of domestic violence, and, as Russell and Clark testified, respondent received services that were tailored to accommodate her cognitive disabilities to help her do so.

Respondent also argues that the DHHS failed to order a psychiatric evaluation in addition to the psychological evaluation on which her treatment plan was based. However, *In re Hicks/Brown* requires only that the DHHS "offer evaluations to determine the nature and extent of the parent's disability and to secure recommendations for tailoring necessary reunification services to the individual," *Id*. at ___; slip op at 16; it does not require that this evaluation be performed by a psychiatrist rather than a psychologist.

Finally, respondent argues that the court erred by terminating her parental rights before she had an opportunity to benefit from services tailored to her disability. However, as petitioner points out, respondent had 357 days between the initial dispositional order and the termination order to rectify the conditions that led to the adjudication, while MCL 712A.19b(3)(c)(*i*) allows termination after 182 days.

Further, there is nothing in the record to indicate that additional time would have improved respondent's capacity to care for her child, given how little she was able to retain and use from the tailored services she did receive. "In the event that reasonable accommodations are made but the parent fails to demonstrate sufficient benefit such that he or she can safely parent the child, then the court may proceed to termination." *Id*. at ___; slip op at 16. The record shows that after receiving six months of services from parent coach Linda Spaine, respondent still had not demonstrated an ability or an inclination to learn the basic skills she would need to care for the child, such as feeding him and talking to him, nor had she demonstrated an attachment to him or an ability to control her temper in front of him and focus on his needs. Spaine concluded that there was no reasonable expectation that respondent would ever be able to learn and apply the skills necessary to care for the child.

Likewise, Russell testified that the closing documentation from the Healthy Families Program indicated that the family had not benefitted from the 10 months of in-home services they received, nor had the PIP worker been able to help respondent understand how having loud arguments in front of the child affected him. According to Russell, the PIP worker's report indicated that respondent was resistant to accepting instruction, appeared to have a lack of connection with the child, and was unable to apply the skills and concepts that she had been taught. Russell also concluded that respondent would not be able to rectify the barriers to reunification within a reasonable time.

Given this evidence, the court did not clearly err by concluding that there was no reasonable likelihood that respondent would be able to rectify the conditions that led to the adjudication or provide the child proper care and custody within a reasonable time. MCL 712A.19b(3)(c)(*i*), (3)(g).

## C. BEST-INTERESTS DETERMINATION

We review the trial court's determination that the termination of a person's parental rights was in the child's best interests for clear error. *In re Trejo Minors*, 462 Mich at 356-357. A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *In re Miller*, 433 Mich at 337.

In deciding whether terminating a person's parental rights is in the best interests of the child, the court may consider (1) the child-parent bond, (2) the person's parenting ability, (3) "the child's need for permanency, stability, and finality," (4) and "the advantages of a foster home over the parent's home[.]" *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012).

The record showed that respondent had difficulty bonding with the child, that she did not have the ability to provide even the most basic care for him without constant supervision, and

that respondent's home was an unsuitable environment for him. Respondent's argument that the court failed to consider whether she would have been able to care for the child with proper support is unavailing, given that no such support was available. Under these circumstances, the trial court's decision that termination was in the child's best interests was not clearly erroneous.

Despite evidence of record to support the trial court's disposition, because the manner in which the court obtained jurisdiction violated respondent's due process rights, the termination order cannot stand. Respondent's plea is set aside, the termination order is vacated and this case is remanded for proceedings not inconsistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien